# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **WAKEEL ABDUL-SABUR,** | ) | Civil Action No. 7:15cv00492 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **GAIL JONES,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Wakeel Abdul-Sabur, a Virginia inmate proceeding *pro se*, filed an amended complaint pursuant to 42 U.S.C. § 1983 naming as defendants T. Back, a Unit Manager at Augusta Correctional Center ("Augusta"), and Israel "Big Dawg" Hamilton, the former Assistant Warden at Red Onion State Prison ("Red Onion").[1] Abdul-Sabur contends that Back was deliberately indifferent to a known and substantial risk of harm when he allowed Abdul-Sabur to be transferred to Red Onion, in violation of the Eighth Amendment, and that Hamilton threatened Abdul-Sabur after the transfer to Red Onion, in violation of the First and Eighth Amendments. Abdul-Sabur seeks damages against defendants in their official and individual capacities. Defendants filed a motion for summary judgment, and Abdul-Sabur responded, making this matter ripe for disposition.[2] Having considered the record, I conclude that defendants' motion for summary judgment must be granted.

---

[1] Abdul-Sabur abandoned claims against previously-named defendants by filing the amended complaint.

[2] Abdul-Sabur also filed replies to defendants' answers that I had not authorized in accordance with Federal Rules of Civil Procedure 7(a)(7) and 12(a)(1)(C). Consequently, those replies do not constitute a pleading that is allowed under the Federal Rules of Civil Procedure or afforded liberal construction, and I do not consider them. *See* Fed. R. Civ. P. 7(a); *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a *pro se* litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); *see also Sherrill v. Holder*, No. 12-00489, 2013 U.S. Dist. LEXIS 190373, at *1, 2013 WL 11316921, at *1 (D. Az. June 25, 2013) ("This Court did not grant Plaintiff leave to file a reply to Defendant's Answer. Further, the Court does not find any basis to permit Plaintiff to file a reply to the Defendant's Answer in this case. As such, Plaintiff's Response to Defendant's Answer is stricken from the record."). Nonetheless, Abdul-Sabur is not prejudiced because "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." Fed. R. Civ. P. 8(b)(6).

# I.

On July 8, 2015, Abdul- Sabur drafted Emergency Grievance #013826 while at Augusta about not wanting to be transferred to Red Onion because Hamilton was Red Onion's Assistant Warden. Thereafter, Abdul-Sabur refused to enter the general population at Augusta, and Back recommended in August 2015 that Abdul-Sabur be transferred to a Level-4 prison.

On or about August 24, 2015, Abdul-Sabur filed a Regular Grievance about the recommendation that he be transferred to a Level-4 prison because he allegedly had enemies at all VDOC Level-4 prisons and wanted to be transferred to the protective custody unit at Dillwyn Correctional Center. The Warden denied the Regular Grievance, and Abdul-Sabur did not appeal.

On September 8, 2015, a correctional officer acknowledged receipt of Emergency Grievance #013826, and the Unit Manger responded, noting that it did not meet the definition of an emergency and that Abdul-Sabur should use the proper form. On that same day, Abdul-Sabur was approved to be transferred to Red Onion.

Abdul-Sabur filed a second Regular Grievance on or around September 8 about not wanting to be housed at Red Onion because of "an investigation" and wanting to be housed at Dillwyn Correctional Center. The Warden denied the Regular Grievance, and Abdul-Sabur did not appeal.

Abdul-Sabur was transferred from Augusta to Red Onion on September 18, 2015, and assigned to segregation upon arrival. On September 26, 2015, Abdul-Sabur was moved into protective custody at Red Onion. By November 9, 2015, Abdul-Sabur remained in protective custody at Red Onion and had not filed any regular grievance about his transfer to Red Onion or his experiences there.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff may not amend a complaint through argument in a brief opposing summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

Defendants claim that they are entitled to summary judgment because Abdul-Sabur failed to exhaust available administrative remedies. A prisoner cannot bring a civil action concerning prison conditions until first exhausting available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. *Id.* To properly exhaust a claim, a

3

prisoner must file grievances with sufficient detail to alert prison officials of the possible constitutional claims that are now alleged as a basis for relief. *See Smith v. Rodriguez*, No. 7:06-cv-00521, 2007 U.S. Dist. LEXIS 43571, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing *McGee v. Fed. Bureau of Prisons*, 118 F. App'x 471, 476 (10th Cir. 2004)).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. *See, e.g., Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 866.1, "Offender Grievance Procedure," provides the administrative remedies for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or

4

procedural errors; "State and Federal court decisions, laws, and regulations"; and other matters beyond the VDOC's control.

Inmates are oriented to the inmate grievance procedure when they enter the VDOC's custody and when they are transferred to other VDOC facilities. Prior to submitting a grievance, the inmate usually must make a good-faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units.

If the issue is not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. Only one issue per regular grievance may be addressed. Regular grievances may receive three levels of review. A facility's Warden or Superintendent conducts the first, "Level I" review. If the inmate is unsatisfied with the Level I determination, the inmate may appeal the determination within five days of receipt to Level II, which is usually done by a regional ombudsman. For most issues, Level II is the final level of review.[3] A Level I response must be issued within thirty days, and a Level II response must be issued within twenty days. Expiration of the time limit without issuance of a response at any stage of the process automatically entitles an inmate to appeal to the next level.

Abdul-Sabur acknowledged on two verified statements filed with the court that he did not exhaust administrative remedies. In his first statement, Abdul-Sabur affirmed that the cause of action arose at Red Onion but he was housed in Augusta and believed, erroneously, that he did not have administrative remedies available. In his second statement, he affirmed the reverse – the cause of action arose at Augusta but he was housed in Red Onion – and also that remedies were no longer available because either the issue was nongrievable or because there was no

---

[3] For the few issues appealable to Level III, the inmate may appeal the Level II determination within five days of receipt to the Deputy Director or Director of the VDOC.

grievance procedure. Abdul-Sabur clarified this second statement in later filings, arguing in the alternative that his issues were not grievable at all and that he exhausted remedies by filing an Emergency Grievance.

Abdul-Sabur's claim that the issues of this case were non-grievable lacks merit. His lawsuit concerns the conditions of confinement he experienced as a consequence of various actors' decisions on where to house him. His claims fall squarely within the issues under the VDOC's control and to which OP 866.1 explicitly covers. For example, Abdul-Sabur contends that this lawsuit concerns criminal matters and that criminal matters involving VDOC staff are deemed "non-grievable" by OP 866.1. However, the OP excludes "court decisions, laws, and regulations," not criminal matters involving VDOC staff. More notably, grievable issues include "[a]ctions of individual employees" and "[a]ny other matters relating to conditions of care or supervision within the authority of the DOC which affect the grievant personally."

Abdul-Sabur's claim that filing one Emergency Grievance satisfies exhaustion also lacks merit. On July 17, 2015, OP 866.1 was amended to specifically state in pertinent part:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue. . . . Submission of an Emergency Grievance does not satisfy the exhaustion of remedies requirement; the offender must submit the issue on a Regular Grievance if not satisfied with the Emergency Grievance response. The exhaustion of remedies requirement will be met only when the Regular Grievance has been appealed through the highest eligible level without satisfactory resolution of the issue.

OP 866.1 § IV.O.2.

Notably, the OP never allowed one Emergency Grievance to serve as a complete means of exhausting the process described in the rest of the OP, either before or after that amendment. Although the OP had previously been silent as to the distinction between an Emergency

6

Grievance and a Regular Grievance for purposes of exhaustion, the fact the VDOC subsequently disqualified a practice from exhaustion does not suggest that the practice previously qualified, by silence, as exhaustion. Furthermore, the filing of an Emergency Grievance would not make the Regular Grievance process unavailable or otherwise preclude an inmate from seeking informal resolution, filing a Regular Grievance, or appealing an unfavorable disposition through available levels of review. This finding is supported by the OP, which acknowledges the different purposes of a Regular Grievance and an Emergency Grievance. An Emergency Grievance is designed to elicit lower-level prison staff's response within eight hours to remedy an immediate risk of serious personal injury or irreparable harm. Also, an Emergency Grievance is not processed or appealed in a way that would provide notice to administrative staff, like a warden, regional administrator, or a deputy director, which is an objective of OP 866.1.

Additionally, OP 866.1 allowed him to mail a Regular Grievance back to a former prison, where it would have been processed the same as if it had been filed from within that prison. Thus, remedies were not made unavailable on account of prison transfers.

The records reflects that Abdul-Sabur did not complete the process for administrative review for his claims, and his arguments do not establish that administrative remedies were unavailable through no fault of his own. Accordingly, defendants are entitled to summary judgment because Abdul-Sabur failed to exhaust available administrative remedies.[4]

---

[4] I note briefly that Abdul-Sabur sought to defer summary judgment per Federal Rule of Civil Procedure 56(d) because he had not yet received discovery requests to which defendants objected. None of the requests relate to administrative remedies, and Abdul-Sabur has not established by affidavit that he cannot present facts essential to justify his opposition on that basis. Therefore, I will not delay the disposition of this case based on 42 U.S.C. § 1997e(a). *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (noting discovery should be limited to relevant matters proportional to the needs of the case).

### III.

For the reasons stated, I will grant defendants' motion for summary judgment.

**ENTER**: This 14thday of September, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE